IN RE ESTATE of JOSEPH LANDGRAF, Deceased; HARRY TROLL, Public Administrator, Respondent, v. PHILIP J. LANDGRAF, Appellant.

St. Louis Court of Appeals, May 5, 1914.

1. **EXECUTORS AND ADMINISTRATORS: Authority of Public Administrator.** The enumeration of the conditions set forth in Sec. 302, R. S. 1909, authorizing the public administrator to take charge of estates of deceased persons, is an implied exclusion of all others, in accordance with the maxim, *"expressio unius est exclusio alterius."*

2. ———: ———. In an action to revoke the authority of a public administrator to administer on the estate of a non-resident decedent, consisting of promissory notes secured by deeds of trust, *held* that the assets of the estate situated in this State were not "left in a situation exposed to loss or damage," within the fourth subdivision of Sec. 302, R. S. 1909, nor "liable to be injured, wasted or lost," within the fifth subdivision, and hence it is *held* that the public administrator, who asserted a right to administer under these subdivisions, had no right to administer.

3. ———: Dispensing with Administration: Rights of· Distributees. Those beneficially interested in the assets of the estate of a deceased person have the equitable title thereto, and the distributees have the right to take title to the personal property of the estate, even though no administration be had.

4. ———: Authority of Public Administrator: Estate of Non-resident. The public administrator is not entitled to take possession, as ancillary administrator, over the objections of the distributees and the domiciliary administrator, of assets in

this State belonging to the estate of a nonresident decedent, who left no debts to be paid in this State, on the ground that title to the assets could not pass to the distributees except through the administrator and that the foreign administrator could not sue to enforce debts owing the estate, since Sec. 302, R. S. 1909, enumerating the conditions under which the public administrator is authorized to take charge of the estates of deceased persons, does not authorize him to take charge of an estate on such grounds.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

REVERSED AND REMANDED (*with directions*).

*Alexander R. Russell* for appellant.

(1) The public administrator is a statutory officer, empowered to act under the circumstances specified in the statute creating his office. Sec. 302, R. S. 1909; Adams v. Larrimore, 51 Mo. 130; McCabe v. Lewis, 76 Mo. 296; Tittman v. Edwards, 27 Mo. App. 492; State ex rel. v. Mast, 104 Mo. App. 348; Welsh v. Manwaring, 120 Wis. 377; Matter of Page, 107 N. Y. 266; Estate of Barton, 52 Cal. 538; Estate of Von Bunken, 120 Cal. 343. (2) The statute having expressed the conditions upon which the public administrator may act, the right to act under conditions not specified in the statute is excluded. 2 Sutherland on Stat. Constr. (2 Ed.), secs. 491, 493; Beckett v. Selover, 7 Cal. 215, 230; Kolkmeyer v. City of Jefferson, 75 Mo. App. 683; State ex el. v. Woodson, 128 Mo. 514. (3) Under the facts in this case, there is no necessity for either public or private administration. Marshall v. Crow, 29 Ala. 278; Perryman v. Greer, 39 Ala. 133; Carter v. Owens, 41 Ala. 217; Fretwell v. McLemore, 52 Ala. 124; Jones v. Brevard, 59 Ala. 499; McGhee v. Alexander, 104 Ala. 116; Austin v. Snider, 17 Colo. App. 182; Waterhouse v. Churchill, 30 Colo. 415; Woodhouse v. Phelps, 51 Conn. 521; Elliott v. Lewis, 3 Edw.,

ch. 40; Akin v. Akin, 78 Ga. 24; Gwinn v. Melvin, 9
Idaho, 202; Abbott v. People, 10 Ill. App. 62; Savage
v. Luther, 165 Ill. App. 1; Lewis v. Lyons, 13 Ill. 117;
Abbott v. People, 105 Ill. 588; Cotterell v. Coen, 246
Ill. 410; Roundtree v. Pursell, 11 Ind. App. 522; Sal-
ter v. Salter, 98 Ind. 522; Holtzman v. Hibben, 100 Ind.
338; Robertson v. Robertson, 120 Ind. 333; Douglass
v. Albrecht, 130 Iowa 132; Succession of Graves, 50
La. Ann. 435; Wilkinson v. Robertson, 85 Md. 447;
Buswell v. Newcomb, 183 Mass. 111; Needham v. Gil-
lette, 39 Mich. 574; Sprague v. Moore, 130 Mich. 92;
Granger v. Harriman, 89 Minn. 303; McCracken v.
McCaslin, 50 Mo. App. 85; Todd v. Jones, 157 Mo.
App. 416; Lich v. Lich, 158 Mo. App. 400; Richard-
son v. Cole, 160 Mo. 372; Johnston v. Johnston, 173
Mo. 97; Mahoney v. Nevins, 190 Mo. 360; Hooper v.
Holmes, 11 N. J. Eq. 122; Dickenson v. Hoes, 84 N. Y.
S. 152; In re Losee's Estate, 94 N. Y. S. 1082; Catlin
v. Huestis, 11 Ohio Cir. Ct. 120; Walworth v. Abel, 52
Pa. St. 370; McLean's Extr. v. Wade, 53 Pa. St. 146;
Angier v. Jones, 28 Tex. Civ. App. 402; Clifton v.
Lilley, 12 Tex. 130; Duncan v. Veal, 49 Tex. 603; Bab-
bitt v. Bowen, 32 Vt. 437; Murphy v. Murphy, 42 Wash.
142; Hinn v. Gersten, 122 Wis. 222; Wood v. Weimar.
104 U. S. 786, 26 L. Ed. 779.

*Henderson, Marshall & Becker* for respondent.

ALLEN, J.—Joseph Landgraf, a citizen and resi-
dent of the county of St. Clair, State of Illinois, died
intestate in said county and State on February 19,
1910, and his son, Philip J. Landgraf, the appellant
herein, was appointed administrator of his estate by
the probate court of said county, and duly adminis-
tered thereupon. Among the assets of such estate were
certain negotiable promissory notes executed by per-
sons residing within the State of Missouri, payable in
the city of St. Louis, and secured by deeds of trust upon

real property in said city. These notes, together with the other assets in the hands of the administrator, were by the latter duly distributed to the lawful heirs of said deceased. Prior to the approval of the final settlement of said administrator by the probate court of said St. Clair county, Illinois, the respondent, public administrator of the city of St. Louis, filed a notice in the probate court of said city that he had taken charge of the estate of said Joseph Landgraf, deceased, in this State; and thereupon filed a petition in the probate court of said St. Clair county, Illinois, praying that such court make an order on appellant, as administrator, directing him to turn over the above-mentioned notes and deeds of trust to respondent, "ancillary administrator of the estate of said deceased acting in and for the State of Missouri." The said probate court of St. Clair county, Illinois, denied the prayer of said petition. Thereafter appellant, as "a son and one of the heirs at law of said Joseph Landgraf, deceased," and alleging his appointment as administrator in Illinois, etc., petitioned the probate court of the city of St. Louis, praying the court "to set aside and vacate the authority of the said Harry Troll, public administrator, to administer said estate or any part thereof or to in any way interfere with such administration" by the petitioner.

Thereafter the probate court of the city of St. Louis, in accordance with the prayer of the petition last above mentioned, revoked the authority of respondent to administer upon said estate in this State. The respondent thereupon prosecuted an appeal to the circuit court of the city of St. Louis. The latter court entered judgment affirming the said judgment of the probate court, but thereafter, upon respondent's motion, granted a new trial, upon the ground "that the judgment of the court was based upon an erroneous conception of the law."

The sole question involved pertains to the right of the public administrator to take charge of and administer upon the said debts owing to deceased in this State, evidenced by the aforesaid promissory notes. Respondent's position is, that the notes of the deceased are assets in the State of Missouri, and not in Illinois; that is to say, that these debts have their *situs* in the State of Missouri, wherein the payors reside; and that "this is the decisive question in this case." And in support of the proposition that they are Missouri assets respondent cites: Becraft v. Lewis, 41 Mo. App. 546; McCarty v. Hall, 13 Mo. 480; Partnership Estate of Henry Ames & Co., 52 Mo. 290; Richardson v. Busch, 198 Mo. l. c. 186, 95 S. W. 894; Jellinik v. Huron Copper Co., 177 U. S. 1.

But the only question with which we have to deal is whether respondent, as public administrator, was authorized by law to administer upon any property of the deceased within this State, or whether his act in the premises was merely an officious intermeddling. The solution of this question does not depend upon whether these debts technically have their *situs* within this State or otherwise, but is to be determined by looking alone to the statute conferring authority upon the public administrator to take charge of estates.

The pertinent provisions of the statute (Sec. 302, R. S. 1909) authorizing the public administrator to take the estates of deceased persons into his charge and custody are as follows:

"It shall be the duty of the public administrator to take into his charge and custody the estates of deceased persons, . . . in his county in the following cases: First, when a stranger dies intestate in the county without relations . . . ; second, when persons die intestate without known heirs; third, when persons unknown die or are found dead in the county; fourth, when money, property, papers or other estate *are left in a situation exposed to loss or damage,* and

no other person administers on the same; fifth, when any estate of any person who dies intestate therein, or elsewhere, is left in the county *liable to be injured, wasted or lost,* when said intestate does not leave a known husband, widow or heirs in this State . . .; ninth, where, from any other good cause, said court shall order him to take possessin of any estate to prevent its being injured, wasted, purloined or lost." (Italics ours.)

Manifestly the enumeration of the conditions set forth in the statute authorizing the public administrator to take charge of estates of deceased persons is an implied exclusion of all others, in accordance with the maxim *expressio unius est exclusio . alterius.* The statute makes explicit provision as to the power and duty of a public administrator in taking charge of estates, and his authority to act in the given instance must be found within the terms of the statute.

In McCabe v. Lewis, 76 Mo. 1. c. 303, in treating of this statute, it is said: "The introductory clause of the section restricts the authority of the public administrator to administration of estates of deceased persons in his county, and gives authority only in the cases mentioned in the succeeding subdivisions, and is a key to the construction of each of them."

It is quite apparent that the authority of the public administrator must be derived from either the fourth or the fifth subdivision of the statute. Respondent contends that his authority is derived from the fourth, which authorizes the public administrator to act "when money, property, papers or other estate are left in a situation exposed to loss or damage and no other person administers on the same." In other words, the right of the public administrator to take charge of the estate in Missouri is sought to be justified upon the ground that there are assets having a legal *situs* within this State, and that such assets "are left in a situation exposed to loss or damage." It is clear that,

though there may be assets of a foreign testator or intestate, having a technical *situs* in this State, nevertheless the public administrator has no power or authority to administer thereupon, under the fourth subdivision, supra, unless the same are left in a situation *exposed to loss or damage.* The record before us utterly fails to show that the property here in question was in any manner exposed to loss or damage. On the contrary, the record reveals that the debts in question were evidenced by negotiable promissory notes which formed a part of the assets which were administered upon in the State of Illinois, and which, together with the deeds of trust securing the same, had been distributed to the lawful heirs entitled to receive them.

It appears that the Missouri debtors in question were paying from time to time, as they became due, certain interest notes, representing the interest upon the principal notes, and that one of the principal notes had been paid. We think it altogether absurd to say that there was property of the deceased left in this State exposed to loss or damage. The situation was one entirely agreeable to those in interest, and there was no occasion whatsoever for the public administrator or anyone else to interfere.

The office of public administrator is one created to provide a special bonded officer to act, under the conditions and circumstances specified in the statute, to the end of preserving the property of an estate. And manifestly it was not intended that such officer should have the power or authority to take into his possession property belonging to foreign testators or intestates, except under the conditions plainly set forth in the statute.

And what we have said with respect to the fourth subdivision of the statute applies with equal force to the fifth subdivision thereof. Under the latter, the

public administrator is authorized to take charge of an estate of any person dying intestate which is left in the county *liable to be injured, wasted, or lost,* etc. The evidence refutes the idea that the property here sought to be administered upon was liable to be wasted, injured or lost, within the meaning of the statute.

The learned trial judge, in sustaining the motion for a new trial said, in a memorandum filed:

"The idea which I had that the statute authorizes the public administrator to take charge of an estate applied only where the assets were tangible, but not where they consist only of choses in action, was based upon the erroneous assumption that it was only the former class of assets which might be exposed to loss or damage or be liable to be injured, wasted or lost,, if not taken in charge of by the administrator. Further reflection has satisfied me that a chose in action, a claim, or demand against another person, might very easily be entirely lost if its enforcement were delayed. A debtor who is perfectly able to meet his obligations to-day, may be insolvent a year hence."

From this it appears that the action of the trial court in sustaining the motion for a new trial was predicated upon the idea that choses in action *might* be exposed to loss or damage, etc. This may be quite true. But the question in the instant case is *were* they in fact here exposed to loss or damage or liable to be injured, wasted or lost. The fact is, that the evidence utterly negatives any such idea. On the contrary, the evidence shows that the notes and deeds of trust were in the hands of those entitled thereto, who were fully aware of the whole situation, and who were amply able to look after their own interests in the premises. Indeed, it appears that no difficulty whatsoever arose on this score until the public administrator asserted the right to take charge of the property in question.

Respondent urges that the personal property of the foreign intestate in this State passed at his death

to the ancillary administrator, and that title thereto can be derived only through the latter. As to this it may be said that those beneficially interested therein have the equitable title thereto. And the courts of this State (to say nothing of like cases in other jurisdictions) have in many instances recognized the right of distributees to take title to personal property even though no administration be had. [See McCracken v. McCaslin, 50 Mo. App. 85; Johnston v. Johnston, 173 Mo. 91, 73 S. W. 201; Mahoney v. Nevins, 190 Mo. 360, 88 S. W. 731; Todd v. James, 157 Mo. App. 416, 138 S. W. 929.]

But however this may be, respondent is not charged with the duty of seeing to it that the holders of these notes and deeds of trust properly acquire title to them. And no such question is here involved. We are concerned only with the power and duty of the public administrator under the law, who can act only under such circumstances as are designated in the statute wherein such authority is conferred upon him. In this connection, however, it may be said that the purpose of administration in this State upon the estates of foreign testators and intestates, in the nature of ancillary administration, is for such purpose as the payment of debts in this jurisdiction, or for the collection of the estate and its preservation from injury, damage and loss. In the instant case it is not contended that there are any known debts to be paid in this jurisdiction; and it is not upon this ground that it is sought to have administration in this State. And so far as concerns the collection and preservation of the estate, it clearly appears that the domiciliary representative and the distributees did not require respondent's assistance in this regard. Indeed they have strenuously and bitterly opposed the latter's interference, asserting that no difficulty whatsoever had arisen with respect to the collection and preservation

Troll v. Landgraf.

of the estate until respondent attempted to lay heavy hand upon it.

Under such circumstances it would appear to be altogether unreasonable to suppose that the law contemplates that the public administrator must be permitted to take charge of assets of an estate, upon the theory merely that they have a technical legal *situs* in this State, against the wishes of those interested, and where he would in truth be nothing but a naked passive trustee, with no duty to perform except to take the property into his possession, hold it during the period of administration, and then return it to those who are rightfully entitled to it, less his fees and expenses.

It cannot be that the law contemplates that foreign administration of this sort, ancillary in character, may be enforced upon those interested in an estate, against their will, when, as here, no necessity has arisen therefor. And we think it altogether clear that our statute has purposely limited and restricted the authority of the public administrator so as to prevent this very thing.

It is also urged that a Missouri adminstrator alone may maintain an action to collect debts due the estate from debtors residing in this State. This is likewise entirely foreign to the question before us. No occasion had arisen for instituting any action in this State; and, furthermore, this could have no bearing upon the question of respondent's authority under the statute, but would be a matter for the consideration of those interested in the estate.

Other questions are raised, but they have no bearing upon the controversy and need not be discussed.

Our conclusion is, that the public administrator had no right or authority to take charge of the estate of the deceased within this jurisdiction, and that the probate court acted properly in revoking his authority. The judgment of the circuit court should therefore be reversed and the cause remanded, with directions to

enter judgment affirming the judgment of the probate court, and to duly certify the same to the latter court. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.