STATE OF MISSOURI at the relation of THOMAS R. MADDEN, as Administrator of the Estate of HAZLETT KYLE CAMPBELL, Relator, v. EUGENE J. SARTORIUS, as Judge of the Circuit Court of the City of St. Louis.—163 S. W. (2d) 987.

Court en Banc, July 28, 1942.

*Igoe, Carroll & Keefe* and *Paul G. Ochterbeck* for relator.

*William M. Fitch* for respondent.

1058

1060

1062

*Leahy, Walther & Hecker, Cox, Blair, Kooreman & Wallach, H. A. Hamilton, Isaac C. Orr, Fordyce, White, Mayne, Williams & Hartman, Bryan, Williams, Cave & McPheeters, Edwards, Metcalfe & Strong, Jones, Hocker, Gladney & Grand, Harry Troll, Clarence Neudeck, H. James Sautter, James A. Henderson, G. W. Marsalek, Robert E. Hannegan, Edward J. McCarty* and *Jesse E. Bishop* for all of the Heirs of Hazlett Kyle Campbell, deceased.

*Daniel N. Kirby, Harry W. Kroeger* and *Hord W. Hardin* for St. Louis Union Trust Company and Allen C. Orrick, Successor Trustees, *amici curiae.*

*Roy McKittrick*, Attorney General, and *Russell C. Stone*, Assistant Attorney General, for State Treasurer as *amicus curiae*.

LEEDY, J.—In this proceeding, relator seeks to compel the respondent judge to grant three appeals, one from the final judgment and decree of June 19, 1941, and two from supplementary orders made after and in aid of said final judgment and decree in the case of St. Louis Union Trust Company and Allen C. Orrick, as successor trustees, etc., v. Clarke et al., No. 23,694-C, referred to in the com-

panion cases. For the general facts in relation to said cause, see the statement thereof, under heading "General Facts," found in the opinion in the companion causes numbered 37,871 and 37,872. [State ex rel. Yale University v. Sartorius, 349 Mo. 1039, 163 S. W. (2d) 981.]

Pursuant to a motion of plaintiff-trustees, the relator herein was ordered made a party defendant in said cause and required to answer the trustees' petition by setting forth any claim of right he might have, as administrator, to the property in question. In obedience to said order, relator, as such defendant, filed an answer ▮ and cross bill wherein he set up alternative claims, under one of which he would be entitled to all of the personal property held by the plaintiff-trustees, and under the other, one-half thereof. Without undertaking to set out the details, it may be said that, in substance, these claims, as in the Yale University case, were based upon contentions with respect to the effect of the deed of settlement of 1877 and the subsequent division in 1885 of the trust property into three equal parts (instead of four, Virginia, the mother, having died in the interim), and involve the validity of the provisions of the deed of 1885 limiting the remainder interests in the trust property after the death of Hazlett to his heirs; so that, as the administrator contends, either one-half or all the property (depending on which theory the court might adopt), upon the death of Hazlett, became the property of his estate and subject to distribution under the laws of descent and distribution, and not as vested remainder interests as found by the decree. The judgment and decree denied relator's claim, and dismissed his cross bill with prejudice, following which he took appropriate steps to appeal, culminating in the filing of a statutory affidavit therefor, which was denied.

A great many propositions are urged in the 184-page brief of respondent, as well as in those of amici curiae. The case turns on the question of whether the administrator is a party aggrieved, within the meaning of Section 1184, R. S. '39 [Mo. R. S. A., sec. 1184] so as to be entitled to an appeal, and this may be determined without developing all of the many questions tendered by the briefs.

▮ We are of the opinion that the denial of the administrator's claim of right to either half or all of the personal property in the possession of the trustees undoubtedly makes him an aggrieved party under the doctrine of the Yale University case, unless it can be said that the circumstances presently to be noticed alter the situation. Of these briefly: No money or property has come into the possession of the administrator, and it is not contended that the estate consists of assets other than those sought to be recovered from the trustees. It appears that only two demands were presented against the probate estate, both of which were allowed, one for funeral expenses, and the other for additional Federal income taxes for certain years. On the

trustees' motion in the circuit court, the respondent ordered said claims paid out of the trust funds in their possession, and this has been done. The time for presenting claims has expired. But it further appears that the relator-administrator has been notified by the United States Internal Revenue Department of the tentative determination of the net value of the Estate of Hazlett in an amount in excess of Two Million Dollars, and the liability of the estate for the payment to the United States of estate taxes in the sum of $582,019.58, subject to reduction in the sum of $107,140.96 if payments in that amount should be made to the State of Missouri on account of estate and inheritance taxes. Presumptively, at least, the same persons found by the decree take, and in the same proportions, either as remaindermen under the trust instruments, or as distributees under the statutes of descent and distribution.

On this state of facts, it is contended, with some degree of plausibility, that the administrator may not array himself against the heirs, and thus seek, on appeal, to establish a tax liability, as a basis for administering the property, which, under the decree as rendered, does not exist. But, as pointed out above, the heirs claim the property, and under the decree take, as remaindermen, and not as distributees under the statutes of descent and distribution. In their status as remaindermen their claims are antagonistic to the estate, at least to the extent of tax liability of the estate, and hence the administrator does not represent them in such claimed status. In this respect the same principle would seem to apply as in those instances where, prior to an order of distribution, property is claimed by one or more heirs or distributees to the exclusion of the estate, in which situation it could hardly be doubted that the administrator would have the right of appeal.

Respondent and the heirs rely upon a line of cases dealing with family settlements, where property is not required for the payment of debts, and the estate is not administered. [Richardson v. Cole, 160 Mo. 372, 61 S. W. 182; Todd, Admr., v. James, 157 Mo. App. 416, 138 S. W. 929; Johnston v. Johnston, 173 Mo. 91, 73 S. W. 202; McCracken v. McCaslin, 50 Mo. App. 85; Bell v. Farmers' & Traders' Bank, 188 Mo. App. 383, 174 S. W. 196.] Richardson v. Cole ▉ is typical where it was said the court "will not require an heir to pay over money to an administrator when such administrator has no debt to pay, *nor any use to make of it connected with the estate,* merely that he may retain it for his own benefit, or be paid his costs and commissions." (Italics ours.) These cases apply a well-recognized rule under their particular facts, but we do not regard them as controlling. Bell v. Farmers' & Traders' Bank, supra, is stressed. It involved a somewhat analogous question under the former collateral inheritance tax law. The public administrator brought suit against a bank to recover the amount of a deposit made by the deceased,

which the bank subsequently paid to the heirs under a family settlement. Recovery was denied, but the court pointed out that it did not have the effect of allowing the distributees to avoid payment of the tax, because it was not a debt, nor a claim, against the estate as such, but attached to the property and interest therein, passing to the individual heirs, and the statute made ample provision for collection thereof by a civil action. There the heirs took under the statutes of descent and distribution—quite a different question from the one here presented; and there the individual interests were liable under that statute, but not so here if the decree stands. Of course, in a contest between the administrator and the taxing authorities as to the liability of the estate for taxes, the administrator would not be aggrieved by a judgment absolving the estate, but again that is not the situation presented in this case. The non-liability for taxes is merely one of the effects flowing from the decree. Whether the effect of a reversal would be to divest the circuit court of jurisdiction to supervise the complete and final distribution of the property is a question which can be determined if and when it arises, and upon which we will not speculate under the state of the pleadings in this case.

But apart from what has been said above, there are considerations of public interest involved. Of the 161 persons found to be heirs, five are residents of this state; all the others are scattered throughout the United States, and several foreign countries. The resident heirs were denied Letters of Administration because, in the opinion of the Probate Court, they were not suitable persons to administer for the reason their official duties would bring them in direct conflict with their personal interests, in that their personal "interests demand a defense of the validity of the trust instruments, while the state's interest in the tax (inheritance and estate) call for a good faith challenge of their validity." Accordingly, relator was appointed, and he was brought into the circuit court under compulsory process, and required to assert his claim. If his claim, as asserted, is valid (and in this proceeding we are not in any wise concerned with its merits), the property now constituting the trust estate in the hands of the trustee is, in reality, the property of Hazlett's Estate, and subject to large Federal and State taxes; but if the decree of the circuit court is not reversed or set aside, it appears that there will be no such tax liabilities. Quite naturally, this large group of collateral, and, for the most part, non-resident heirs, are satisfied and content with the finding of the circuit court, as might be supposed. Indeed, it appears from the records of this court that after relator's appeal was denied, a proceeding on behalf of the heirs was instituted in the Probate Court to remove relator on the ground that his conduct in seeking an appeal was prejudicial to the interests of the heirs. This was denied, and certiorari was sought in this court to review that record, which was likewise denied.

The state was not a party to the proceeding in the suit below, but the administrator, the trustees, and the heirs were, and the decree rendered therein would doubtless conclude the state. We agree with the relator and the brief of the State Treasurer, as amicus curiae, that it is the administrator's duty to preserve and collect the estate for the benefit of all persons interested in it. It is also his duty to collect inheritance and estate taxes. [Sections 575, 579, R. S. '39 (Mo. R. S. A., secs. 575, 579); Bryant v. Green, 328 Mo. 1226, 44 S. W. (2d) 7.] What was said in Sheehan, Admr. v. First Nat'l. Bank, 346 Mo. 227, 140 S. W. (2d) 1, to the effect that the administrator is not a tax collector, is to be understood in reference to the point there under consideration, which was the right of the administrator to challenge the constitutional validity of certain statutes. The observation is not to be construed as denying or affecting the duty imposed by the statutes, supra, in reference to the collection of, and liability for, inheritance and estate taxes.

▮ It is manifest that relator's right to appeal is affected with a public interest, which demands that he be heard on the merits of his claim, and certainly in that sense he is a party aggrieved. Our peremptory writ is, therefore, awarded.

▮ As to Count II of the alternative writ: The decree directed the trustees to file a statement of account of their administration of the trust estate within ten days after the rendition of said decree. It further provided for compensation to the trustees for services both prior and subsequent to the death of Hazlett upon a percentage of income and value of assets basis (plus a fixed sum), the amount thereof to be ascertained from the aforesaid statement of account. The relator excepted to the accounting, and sought to appeal from the order overruling his exceptions, which appeal respondent refused to allow. Substantially the same propositions are urged on this count as under Count I on the merits. Having determined that relator has the right of appeal from the decree on the merits, it follows that he is likewise entitled to appeal from the after judgment order overruling his exceptions to the accounting of the trustees.

▮ Count III involves the relator's right to appeal from the order of partial distribution whereby the sum of $540,000.00 was ordered distributed. It can be assumed that had respondent allowed relator's appeal on the merits, he would not have ordered partial distribution. In any event, pending the determination, on appeal, of the validity of his claim (on the merits), the administrator has a right to the preservation of status in quo of the property claimed by him, and to effectuate that right he was entitled to appeal from the order of partial distribution.

From what has been said, it follows that the relator is entitled to the relief sought under Counts II and III. The same conclusion has been reached as to Count I, as hereinabove set forth. Accordingly,

the order under each of said three counts will be that the alternative writs, and each of them, be made peremptory. *Clark* and *Hays, JJ.,* and *Ellison, C. J.,* concur; *Douglas, J.,* concurs in result, *Tipton, J.,* dissents and *Gantt, J.,* absent.